[Cite as *Savoy v. Univ. of Akron*, 2014-Ohio-3043.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Alan Savoy, | : | |
| Plaintiff-Appellant, | : | |
| | : | **No. 13AP-696** |
| v. | : | (Ct. of Cl. No. 2010-11285) |
| The University of Akron, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on July 10, 2014

---

*Traska Law Firm, LLC*, and *Peter D. Traska*, for appellant.

*Michael DeWine*, Attorney General, *Stacy Hannan* and *Amy S. Brown*, for appellee.

---

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, Alan Savoy, appeals from judgments of the Court of Claims of Ohio granting judgment in favor of defendant-appellee, The University of Akron. For the following reasons, we affirm.

**I. Factual and Procedural Background**

{¶ 2} In April 2008, while an undergraduate student at The University of Akron ("the university"), appellant visited Buchtel Hall on the university's campus. During his visit, appellant got into a verbal confrontation with John Case, the university's vice-president of finance and administration. Case and appellant had previously discussed appellant's displeasure with the university's administration and its tuition policy for graduate level courses. During the April 2008 visit, Case said that appellant was

belligerent and called him a liar. Case became concerned about appellant's disruptive behavior and called the university's police department. An officer came to Buchtel Hall and wrote out an incident report, but appellant was no longer in the building.

{¶ 3} A few hours later, Case again called the university police and told them that appellant was in another building on campus. Two officers went to that building and found appellant. The officers arrested him on two outstanding arrest warrants from the city of Akron. While the officers ultimately concluded that they lacked justification to charge appellant based upon the events of that morning, they issued him a trespass warning to keep him out of Buchtel Hall and also referred him to student judicial affairs.

{¶ 4} Dale Adams, now the director of the department of student judicial affairs, received the referral and held a meeting with appellant shortly after the incident. Appellant denied violating any of the university's rules and regulations, so Adams referred the matter to the university hearing board ("Board"). At the hearing, appellant admitted to calling Case a liar, but denied that he was disruptive or used vulgar language. Statements submitted at the hearing from Case and other witnesses to the events of that morning described appellant as being disruptive and using vulgar language. The Board found appellant "responsible" for violating section II-E of the student code of conduct, which prohibits disorderly conduct or lewd, indecent, or obscene conduct on the university premises.[1] As a result, the Board required appellant to attend anger management classes and to schedule appointments before future visits to Buchtel Hall.

{¶ 5} On October 18, 2010, appellant filed a complaint in the trial court alleging claims against the university arising out of these events. Appellant claimed that the university, acting under color of law, falsely arrested him, defamed him by placing false accusations in his academic file, and also interfered with his contractual right to attend the university.

{¶ 6} On the university's motion, the trial court dismissed appellant's claims for lack of subject-matter jurisdiction to the extent they alleged violations of his constitutional rights. Subsequently, the university filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law on appellant's remaining claims of false arrest, defamation, and breach of contract. Specifically, the university argued

---

[1] The Board found him "Not Responsible" for three other violations of the student code of conduct.

that: (1) it did not falsely arrest appellant because he was arrested pursuant to outstanding arrest warrants, (2) it did not defame him because appellant could not point to any false statement made about him, and (3) it did not breach a contract with him but, instead, followed all of its policies and procedures in its student judicial process.

{¶ 7}   Appellant's memorandum in opposition focused on two issues.   First, appellant claimed that his complaint also included claims for malicious prosecution and abuse of process.   Second, he argued that issues of fact on his claims precluded summary judgment for the university.   He submitted an affidavit in which he disputed Case's version of events that occurred at Buchtel Hall, although he admitted to calling him a liar. He also discussed the procedures that the student judicial affairs office followed after the incident.

{¶ 8}   The trial court's decision on the motion for summary judgment addressed all of appellant's claims[2] and granted summary judgment on each of them in favor of the university.

## II. Appellant's Appeal

{¶ 9}   Appellant appeals from both of the trial court's decisions awarding judgment to the university on his claims and assigns the following errors:

> [1.] The trial court should have found that constitutional protections apply to student judicial proceedings.
>
> [2.] The trial court should have recognized numerous issues of fact on appellant's false arrest, malicious prosecution, defamation, and breach of contract claims.

### A.  Appellant's Constitutional Claims

{¶ 10} Appellant argues in his first assignment of error that the trial court should be able to consider his constitutional claims in this matter.  We disagree.

{¶ 11} It is well-established that the Court of Claims lacks subject-matter jurisdiction over constitutional claims.  *Guillory v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-861, 2008-Ohio-2299, ¶ 12, citing *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302 (10th Dist.1992).  Appellant wants this court to limit the

---

[2] The trial court even analyzed his claims for malicious prosecution and abuse of process, even though it concluded that he had waived them.

*Bleicher* holding to cases that review academic decisions, and not to what he calls a university's "police and adjudicative powers." We reject his request. Whether or not the Court of Claims has subject-matter jurisdiction depends upon the type of claims brought by a plaintiff, not the conduct of the defendant state agency. *Id.* at 307, quoting *Thompson v. Southern State Community College*, 10th Dist. No. 89AP-114 (June 15, 1989) (" '[A] plaintiff in the Court of Claims is limited to causes of action which he could pursue if defendant were a private party.' ").

{¶ 12} Because the trial court does not have jurisdiction over constitutional claims, it did not err by dismissing appellant's constitutional claims. Accordingly, we overrule appellant's first assignment of error.

### B. Appellant's State Law Claims

{¶ 13} Appellant argues in his second assignment of error that the trial court erred by granting summary judgment in favor of the university because issues of fact remain on all of his other claims. We disagree.

### 1. Standard of Review

{¶ 14} Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

### 2. False Arrest

{¶ 15} The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show only that he or she was detained and that the detention was unlawful. *Petty v. Kroger Food & Pharmacy*, 10th Dist. No. 07AP-92, 2007-Ohio-5098, ¶ 15.

{¶ 16} Chief Weber averred in his affidavit that the university police arrested appellant due to the two outstanding arrest warrants from the city of Akron. Appellant disputes whether the warrants were the real reason for his arrest or just a pretext for his arrest. Appellant does not dispute, however, the existence or validity of those warrants. Notwithstanding appellant's speculation, an arrest premised upon a valid warrant cannot serve as the basis for a false arrest claim. *Walker v. Kroger's* (Apr. 29, 1994), 6th Dist. No. L-93-162, citing *Brinkman v. Drolesbaugh*, 97 Ohio St. 171 (1918), paragraph four of the syllabus; *Mikes v. Kent State Univ* (Mar. 8, 1990), 10th Dist. No. 89AP-749. Thus, because appellant was arrested pursuant to valid arrest warrants, no genuine issue of material fact exists as to his claim for false arrest and the university is entitled to judgment as a matter of law on this claim. Accordingly, the trial court did not err in granting summary judgment in favor of the university.

### 3. Defamation

{¶ 17} Defamation, which includes both slander and libel, is the publication of a false statement " 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "Slander" refers to spoken defamatory words, while "libel" refers to written or printed defamatory words. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, ¶ 27 (2d Dist.).

{¶ 18} To prevail on a defamation claim, whether libel or slander, a plaintiff must prove the following elements: (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff. *Schmidt v. Northcoast Behavorial Healthcare*, 10th Dist. No. 10AP-565, 2011-Ohio-777, ¶ 8, citing *McPeek v. Leetonia Italian-Am. Club*, 174 Ohio App.3d 380, 2007-Ohio-7218, ¶ 8 (7th Dist.).

{¶ 19} Appellant first argues that the university defamed him when it made false statements in a brief filed on its behalf in a common pleas court action filed by appellant.

For two reasons, we disagree. First, the university did not write the brief. The Ohio Attorney General's office wrote and filed the brief. Additionally, a statement in a judicial or quasi-judicial proceeding is absolutely privileged and may not form the basis for a defamation action as long as the allegedly defamatory statement is reasonably related to the proceedings. *Ibanez v. Mosser*, 10th Dist. No. 11AP-1100, 2012-Ohio-4375, ¶ 9, citing *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993). The statements which appellant points to portrays his time at the school as "troubled" and describe what led to his arrest. Those statements were part of the brief's factual description of the underlying events of the case and were reasonably related to the proceedings in the common pleas court action. Those statements are therefore absolutely privileged.

{¶ 20} Appellant also argues that university officials made false statements to the police in order to initiate the student judicial proceedings and also during their testimony during those proceedings. Again, we disagree. Absolute privilege applies to shield individuals from civil liability for statements made to prosecutors or police reporting possible criminal activity. *Mettke v. Mouser*, 10th Dist. No. 12AP-1083, 2013-Ohio-2781, ¶ 7, citing *Lee v. Upper Arlington*, 10th Dist. No. 03AP-132, 2003-Ohio-7157, ¶ 14-19. The absolute privilege applicable to statements made in a judicial or quasi-judicial proceeding also applies to the testimony provided by the officials during appellant's disciplinary hearing.[3] *Myers v. Steiner*, 9th Dist. No. 25166, 2011-Ohio-576, ¶ 15 (witness' testimony protected from defamation claims by absolute privilege); *Michaels v. Berliner*, 119 Ohio App.3d 82, 87 (9th Dist.1997). Appellant does not present any evidence to dispute that these statements were not reasonably related to his disciplinary proceedings.

{¶ 21} Accordingly, because an absolute privilege protects the allegedly defamatory statements appellant complains of, reasonable minds could only conclude that the university is entitled to judgment as a matter of law for this claim. *Morrision v. Gugle*, 142 Ohio App.3d 244, 260 (10th Dist.2001), citing *Surace v. Wuliger*, 25 Ohio St.3d 229, 231 (1986) (application of privilege in defamation case is matter of law). Appellant attempts to overcome these privileges by demonstrating an issue of fact regarding

---

[3] Because the university's student code and conduct sections requires notice, a hearing, and provides the student with an opportunity to present evidence, the disciplinary proceeding in this case was a quasi-judicial proceeding. *Gaines v. Columbus Civ. Serv. Comm.*, 182 Ohio App.3d 576, 2009-Ohio-2662, ¶ 9 (10th Dist.).

whether the statements were made with actual malice. Actual malice may overcome a qualified privilege, but not an absolute privilege. *Tresner v. Pepsi-Cola Bottling Co.*, 10th Dist. No. 91AP-1093 (Aug. 27, 1992), citing *Costanzo v. Gaul*, 62 Ohio St.2d 106 (1980).

{¶ 22} Because the allegedly defamatory statements were all absolutely privileged, the trial court did not err by granting summary judgment in favor of the university for appellant's defamation claims.

### 4. Breach of Contract

{¶ 23} When a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature. *Prince v. Kent State Univ.*, 10th Dist. No. 11AP-493, 2012-Ohio-1016, ¶ 30; *Behrend v. State*, 55 Ohio App.2d 135 (10th Dist.1977), paragraph two of the syllabus. The terms of such a contract are found in the college or university catalog, handbook, and/or other guidelines supplied to the students. *Prince*, citing *Tate v. Owens State Community College*, 10th Dist. No. 10AP-1201, 2011-Ohio-3452, ¶ 21; *Lewis v. Cleveland State Univ.*, 10th Dist. No. 10AP-606, 2011-Ohio-1192, ¶ 14.

{¶ 24} Appellant generally takes issue with how the university handled the disciplinary process but does not identify a particular contractual term he alleges that the university breached during that process. Dale Adams' affidavit, however, avers that the student judicial affairs office followed all appropriate policies and procedures in appellant's disciplinary process. Our review indicates the same. Per the university's student code and conduct policies, after the student judicial affairs office received the referral about appellant's conduct, it advised appellant of a fact-finding meeting scheduled for April 29, 2008. That meeting was held on May 12, 2008, at which appellant did not agree with the alleged violations. At that point, the matter was referred to the Board for a full hearing. That hearing occurred on May 16, 2008. Witnesses were available at that hearing for appellant to question and he was able to make a statement on his own behalf. After the hearing, the Board found appellant responsible for a violation and imposed sanctions as a result. This process complied with the applicable policies and procedures as set forth in the university's student code of conduct.

{¶ 25} To the extent that appellant argues that the university breached the contract by stopping him from attending classes and delaying his graduation, that conduct

occurred because appellant did not comply with the requirement that he attend anger management classes. The university promptly lifted the hold on his account and he was again able to attend classes at the university when he demonstrated compliance with the requirement.

{¶ 26} Appellant has not demonstrated that genuine issues of fact exist as to his breach of contract claim. Accordingly, the trial court did not err by granting summary judgment on that claim in favor of the university.

### 5. Malicious Prosecution and Abuse of Process

{¶ 27} The elements of the tort of malicious civil prosecution are: (1) malicious institution of prior proceedings; (2) lack of probable cause for filing the prior lawsuit; (3) termination of the prior proceedings in favor of the plaintiff; and (4) seizure of plaintiff's person or property in the prior proceedings. *Schmidt* at ¶ 10; *Crawford v. Euclid Natl. Bank*, 19 Ohio St.3d 135, 139 (1985).

{¶ 28} The elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994); *Cantrell v. Deitz*, 10th Dist. No. 12AP-357, 2013-Ohio-1204, ¶ 12.

{¶ 29} The trial court rejected these causes of actions, in part, because appellant had not alleged them in his complaint. Appellant argues, however, that his complaint can be construed to include these causes of actions. We disagree. Appellant's complaint does not contain allegations that would support these claims,[4] nor did he seek leave to amend his complaint to specifically include these claims after the university's motion. Accordingly, appellant forfeited these claims by not asserting them earlier. *Goldman v. Nationwide Life Ins. Co.*, 8th Dist. No. 97871, 2012-Ohio-3574, ¶ 14 ("A plaintiff cannot include claims beyond those raised in the complaint for the first time in the summary judgment stage of the litigation without amending the complaint."); *Wolk v. Paino*, 8th

---

[4] The complaint clearly sets forth facts that support three claims: false arrest, defamation, and breach of contract. In fact, this court in a previous appeal of this matter noted that his complaint only included these three claims. *Savoy v. Univ. of Akron*, 10th Dist. No. 11AP-183, 2012-Ohio-1962.

Dist. No. 94850, 2011-Ohio-1065, ¶ 36-38 (plaintiff limited to allegations of complaint and may not enlarge those claims in defense to summary judgment motion); *Young v. Leslie*, 9th Dist. No. 08CA0015, 2009-Ohio-396, ¶ 9.

### 6. Conclusion

{¶ 30} The trial court did not err by granting summary judgment to the university on appellant's state law claims.  Accordingly, we overrule appellant's second assignment of error.

## III. Conclusion

{¶ 31} Having overruled appellant's two assignments of error, we affirm the judgments of the Court of Claims of Ohio in favor of the university.

*Judgments affirmed.*

TYACK and CONNOR, JJ., concur.

————————————