[Cite as *A.M. v. Miami Univ.*, 2017-Ohio-8586.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| [A.M.], | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-156 |
| v. | : | (Ct. of Cl. No. 2015-00190) |
| Miami University, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |


D E C I S I O N

Rendered on November 16, 2017


**On brief:** *Spangenberg Shibley & Liber LLP, Jeremy A. Tor*, and *Stuart E. Scott*, for appellant. **Argued:** *Jeremy A. Tor.*

**On brief:** *Taft Stettinius & Hollister LLP, Doreen Canton*, and *Evan T. Priestle*; *Michael DeWine*, Attorney General, and *Peter M. DeMarco*, for appellee. **Argued:** *Evan T. Priestle.*

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, A.M., appeals from the judgment entry of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, Miami University ("Miami"). For the following reasons, we affirm the decision of the Court of Claims.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Unless otherwise indicated, the following facts are undisputed. On October 30, 2011, A.C. sexually assaulted appellant while she was at his private, off-campus residence. Both A.C. and appellant were students at Miami at the time of the assault. Following a hearing, Miami dismissed A.C. as a student.

{¶ 3}   On October 24, 2013, appellant filed her original complaint against Miami in the Butler County Court of Commons Pleas.  The Butler County Court of Commons Pleas transferred the case to the Court of Claims on February 25, 2014.  On March 13, 2014, the Court of Claims dismissed the case without prejudice for lack of subject-matter jurisdiction.  The instant case was refiled in the Court of Claims on March 11, 2015.

{¶ 4}   In her complaint, appellant alleges a negligence cause of action.  According to appellant, Miami:

> [B]reached its duty of care to [appellant], by among other acts and omissions: failing to investigate reports and allegations of sexual misconduct by [A.C.]; failing to act in accordance with and enforce its written rules, regulations, Codes of Conduct, policies, and procedures regarding sexual misconduct, assault and abuse; failing to warn of the dangers presented by members of its student body – of whom it permitted to remain students at Miami University despite reports of sexual misconduct, assault, and abuse; failing to provide a safe environment for its students and contributing to a needlessly dangerous environment; and failing to act as a reasonably safe, careful, and prudent university, college, or institution of higher learning would under the circumstances then and there existing.

 (Compl. at 6-7.)

{¶ 5}   The complaint alleges that the sexual assault of a Miami student by A.C. was "foreseeable and likely" based on information Miami knew or should have known by the date of A.C.'s assault of appellant.  (Compl. at 7.)  Specifically, the complaint alleges that Miami had actual or constructive knowledge about a sexual assault report against A.C. in 2008 and allegations of voyeurism against A.C. in 2009.  Regarding the 2008 incident, the complaint alleges that a woman reported to Miami officials that she had been sexually assaulted by A.C.  Regarding the 2009 voyeurism allegations, the complaint alleges that in September 2009, A.C.'s fraternity dismissed him as a member and turned him into the Oxford Police Department "for acts of criminal voyeurism in violation of [R.C.] 2907.08," arising out of "surreptitiously record[ing] numerous females * * * while they were engaged in sex acts with [A.C.]" and showing these videos to many of his friends without the females' consent.  (Compl. at 3.)  A female student alleged in her statement to Oxford police that in the beginning of the 2009-2010 school year, A.C. had acted in a manner

consistent with the voyeurism allegations by the fraternity. The complaint alleges that the Miami University Police Department became a participant in the investigation of the voyeurism allegations, received a copy of a search warrant to search A.C.'s dormitory residence, was present for the search, and conducted a forensic examination of A.C.'s computer, which uncovered three videos of unidentified females, with their faces not visible, engaging in sexual acts with A.C.

{¶ 6} As a result of the 2008 and 2009 incidents, the complaint states that Miami had actual and constructive knowledge that A.C. had violated its Code of Student Conduct and that as a student, "[A.C.] was subject to the disciplinary action and control, including by virtue of the power of suspension and expulsion, of Miami University." (Compl. at 2.) The complaint alleges that despite Miami's knowledge of multiple reports of sexual misconduct and violations of the Code of Conduct prior to October 2011, it "took no action to investigate these reports or pursue disciplinary action." (Compl. at 6.) Due to Miami's failure to pursue the reports and code violations, A.C. "remained an ongoing and substantial threat to the health, safety, and welfare of other Miami University students" and sexually assaulted appellant as a direct and proximate result of Miami and its employees' actions. (Compl. at 6.) The complaint also states that another female student of Miami alleged that A.C. sexually assaulted her on October 29, 2011. The complaint concludes that as a result of Miami's actions, appellant was caused injuries, rendering Miami liable under the doctrine of respondeat superior and, pursuant to R.C. 2743.02(A)(2), the state's waiver of immunity.

{¶ 7} Miami moved to dismiss the complaint in April 2015 citing the statute of limitations and the inability of appellant to establish that Miami owed the requisite duty of care to A.M. on the facts of the case. Appellant filed a reply the following month. On December 15, 2015, appellant filed notice of service of her first set of interrogatories and requests for production of written discovery. Miami responded several days later by filing a motion for a protective order arguing that because the pending motion to dismiss "addresses purely legal issues, discovery will serve no useful purpose at [that] time." (Dec. 18, 2015 Mot. for Protc. Order at 2.) On February 4, 2016, the Court of Claims denied the motion to dismiss, noting that the determination relied on materials outside of the pleadings and denied Miami's motion for a protective order as moot. Miami filed an

answer to the complaint on February 17, 2016, denying it was negligent and breached a duty of care to appellant and setting forth affirmative defenses.

{¶ 8} The Court of Claims set the case for trial on April 10-12, 2017. After a March 9, 2016 case management conference, the Court of Claims ordered that no discovery would be allowed after November 28, 2016 without leave of the court and that "[a]ny dispositive motions shall be filed on or before December 9, 2016, and shall be heard pursuant to L.C.C.R. 4." (Emphasis omitted.) (Mar. 23, 2016 Entry at 1.) On September 7, 2o16, appellant filed a motion for a telephone conference to discuss deadlines and the schedule of the case in light of pending discovery matters.

{¶ 9} On September 8, 2016, Miami moved for summary judgment on two grounds: the statute of limitations and Miami's entitlement to judgment as a matter of law because it had no legal duty to protect appellant from a sexual assault taking place at the private, off-campus residence of her attacker. Miami supported its motion for summary judgment with supplemental answers to its first set of interrogatories and request for production, the affidavit of David Creamer averring that the residence where the sexual assault took place was not owned by Miami and was not a part of the Miami University campus, and the affidavit of Miami's attorney, Doreen Canton, pertaining to the procedural history of the case. The same day, Miami filed a motion for a protective order to stay further discovery pending resolution of the motion for summary judgment, since the motion for summary judgment addressed "purely legal issues" based on undisputed facts. (Sept. 8, 2016 Mot. for Protc. Order at 2.)

{¶ 10} The Court of Claims filed a notice of non-oral hearing on the motion for summary judgment to be held on October 6, 2016 pursuant to Civ.R. 56 and L.C.C.R. 4(C). On September 15, 2015, the Court of Claims denied Miami's motion for a protective order and denied appellant's motion for a telephone conference as moot.

{¶ 11} On September 22, 2016, appellant moved to compel Miami to produce witnesses and depositions and moved for a continuation of the time to respond to summary judgment, pursuant to Civ.R. 56(F), as "[s]ubstantial discovery is needed to proceed to trial and defend against [Miami's] Motion for Summary Judgment." (Sept. 22, 2016 Mot. at 1.) The Court of Claims granted appellant's motion, indicating that appellant "shall respond to [Miami's] motion for summary judgment on or before *November 7,*

*2016*" and rescheduled the non-oral hearing on the motion for summary judgment on that date. (Emphasis sic.) (Oct. 5, 2016 Entry at 1.)

{¶ 12} Appellant filed her brief in opposition to Miami's motion for summary judgment at 8:13 a.m. on November 8, 2016. Later that same day, appellant filed an amended brief in opposition to summary judgment. A footnote to the amended brief in opposition states that appellant served Miami's counsel with a copy of the original brief in opposition on November 7, 2016, Miami's counsel recognized that some of the exhibits attached to the brief in opposition had been marked confidential and were subject to a stipulated protective order, and that after conferring with Miami's counsel, appellant agreed to submit an amended filing that removed the potentially confidential exhibits. The footnote indicates that appellant requested that the clerk's office not place the original brief in opposition on the public docket. By separate motion the same day, appellant requested leave of the Court of Claims to file certain exhibits under seal. Miami did not move for another continuance to pursue further discovery pursuant to Civ.R. 56(F).

{¶ 13} On November 14, 2016, Miami filed a motion to strike or, in the alternative, motion for leave to file a reply brief to appellant's brief in opposition to summary judgment. Appellant replied, acknowledging the brief in opposition was filed late but arguing Miami's counsel was served with the original motion on November 7 and agreed to the submission of an amended version the following morning. Appellant likewise acknowledged that the brief exceeded the page limit without leave of the court but denied Miami's further contention that attachments to the motion for summary judgment were not properly authenticated.

{¶ 14} On November 21, 2016, the parties filed a joint motion to extend discovery deadlines, including a request for a new fact discovery deadline of December 30, 2016, which the Court of Claims granted. On November 22, 2016, appellant filed a motion for leave to supplement her amended brief in opposition to summary judgment to include a new deposition, which Miami opposed.

{¶ 15} On January 30, 2017, the Court of Claims filed a decision granting Miami's motion to strike appellant's briefs in opposition to summary judgment and granting summary judgment in favor of Miami. Regarding Miami's motion to strike, the Court of

Claims noted that even after appellant had been granted extra time to file her brief in opposition by the Court of Claims, she filed both her original brief, which accidentally contained confidential documents, and her amended brief after the deadline and without leave of the court.  The Court of Claims further agreed with Miami's argument that if the Court of Claims chose to accept the brief in opposition, it would strike exhibits 1, 3, 4, 7, 9, and 10 as unauthenticated and strike exhibits 6 and 8 as witnesses not previously revealed in discovery.  The Court of Claims additionally denied appellant leave to supplement her untimely brief in opposition and denied Miami leave to file a reply brief.

{¶ 16}  Regarding summary judgment, the Court of Claims stated that it considered appellant's brief in opposition and attached exhibits and found that even if it had allowed the untimely brief and exhibits, its decision on the disposition of the case would not change.  The Court of Claims did not find the standard of care used in premises liability cases applicable to appellant's allegations but, rather, found the instant case to be based on the existence, or lack thereof, of a special relationship Miami had with appellant and the foreseeability of harm caused by Miami's alleged negligence.  The Court of Claims disagreed with appellant that foreseeability alone creates that special duty and explained that a court must first determine whether a special relationship exists by considering a limited number of such established relationships under Ohio law, and then, if such a special relationship exists, proceed to consider whether the alleged harm was foreseeable to impose liability.

{¶ 17}  Ultimately, the Court of Claims found that none of the special relationships established under Ohio law, including those between business owners and invitees and those imposed by statutory or judicial determination, applied to the case.  Specifically, the Court of Claims found that acting contrary to an institution's own policies, put in place to prohibit conduct, is insufficient to impose a duty of care for negligence claims and also found no authority confirming that an "in loco parentis" relationship exists between universities and its college-aged students.  (Jan. 30, 2017 Decision at 9.)  As a result, the Court of Claims found that Miami had no duty to protect appellant under negligence law.  The Court of Claims added the alternative finding that even if a duty existed, a review of the record showed that A.C.'s criminal act against appellant was not foreseeable based on Miami's awareness of unestablished allegations of sexual assault and voyeurism several

years prior to appellant's assault.  The Court of Claims disagreed with Miami's argument regarding the action being barred by the statute of limitations.

{¶ 18}  Appellant filed a timely appeal to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 19}  Appellant presents two assignments of error:

> [1.] The trial court erred by granting summary judgment in favor of Defendant-Appellee Miami University on Plaintiff-Appellant's negligence claim.

> [2.] The trial court erred by striking Plaintiff-Appellant's brief in opposition to Defendant-Appellee's motion for summary judgment, as well as certain exhibits attached to the brief, and by denying Plaintiff-Appellant's motion for leave to supplement her brief in opposition.

## III.  DISCUSSION

### A.  Second Assignment of Error

{¶ 20}  For purposes of clarity, we will begin by addressing appellant's second assignment of error.  Under her second assignment of error, appellant contends that the Court of Claims abused its discretion by striking appellant's brief in opposition to Miami's motion for summary judgment, as well as certain exhibits attached to the brief, and by denying appellant's motion for leave to supplement her brief in opposition.

{¶ 21}  Trial courts have inherent power to manage their own dockets and the progress of the proceedings before them. *Canady v. Rekau & Rekau, Inc.*, 10th Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 16.  As a result, an appellate court reviews challenges related to "control of the docket and consideration of motions by the trial court" for an abuse of discretion.  *Jarvis v. Hasan*, 10th Dist. No. 14AP-578, 2015-Ohio-1779, ¶ 55.  "Abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22}  Under L.C.C.R. 4(D), in the Court of Claims, all motions for summary judgment filed pursuant to Civ.R. 56 are set for a non-oral hearing date on the 28th day following the filing of the motion for summary judgment and are deemed submitted to the judge on that date.  *See also* Civ.R. 56(C) (allowing for service of responsive pleading to a motion for summary judgment as provided by local rule or by order of the court).

L.C.C.R. 4(B) provides that "[a]ll extensions of time shall be made by written motion which states the specific basis of the extension and which is supported by documentation and, if appropriate, affidavit [and] shall be accompanied by a proposed order which states the duration of the extension." Civ.R. 6(B) governs a trial court's discretion to allow untimely filings. It provides, in pertinent part:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

"[I]f a party could have prevented the circumstances from occurring, the neglect is not excusable." *Law Offices of James P. Connors v. Cohn*, 10th Dist. No. 08AP-1031, 2009-Ohio-3228, ¶ 19.

{¶ 23} In general, a trial court does not abuse its discretion in not considering or denying a motion for an extension when that motion is filed beyond the applicable deadline, particularly where the movant offers no explanation for the untimely filing. *See Hillman v. Edwards*, 10th Dist. No. 08AP-1063, 2009-Ohio-5087, ¶ 8 ("Allowing a defendant to file an answer out of rule without moving for leave to file and showing excusable neglect under Civ.R. 6(B) is an abuse of discretion."); *Ayers v. Demas*, 10th Dist. No. 95APE10-1296 (Mar. 28, 1996) (finding the trial court did not err when it to refused to consider motions for extension and memorandum contra summary judgment filed past the non-oral hearing date); *Pilgrim v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-50 (Oct. 11, 2001); *Dan Eynon Ents. v. Mid-Am. Diesel*, 12th Dist. No. CA2014-06-140, 2015-Ohio-1089, ¶ 17.

{¶ 24} Furthermore, "[w]here a party does not file a Civ.R. 56(F) motion, it is not error for the trial court to rule on a motion for summary judgment" where discovery is pending. *Grenga v. Youngstown State Univ.*, 10th Dist. No. 11AP-165, 2011-Ohio-5621, ¶ 22, *appeal not allowed*, 132 Ohio St.3d 1411, 2012-Ohio-2454, citing *BMI Fed. Credit Union v. Burkitt*, 10th Dist. No. 09AP-1024, 2010-Ohio-3027, ¶ 17-18 ("since appellant

failed to file a Civ.R. 56(F) motion asking the trial court to delay ruling on appellee's motion for summary judgment pending completion of the outstanding discovery requests, appellant cannot argue on appeal that the trial court erred by ruling on the motion for summary judgment").

{¶ 25} In this case, Miami filed its motion for summary judgment on September 8, 2016. On October 5, 2016, the Court of Claims granted appellant leave to file her response to Miami's motion for summary judgment on or before November 7, 2016. Appellant admits that she did not actually file her initial brief in opposition until the morning of November 8, 2016, and filed her amended brief that same day. Appellant did not seek leave from the Court of Claims to file an untimely response, did not address excusable neglect, and did not move for additional discovery under Civ.R. 56(F). Considering the above, we disagree with appellant that the Court of Claims acted in an unreasonable, arbitrary, or unconscionable manner on the facts of this case and, instead, find that the Court of Claims acted within its discretion to strike appellant's brief in opposition to summary judgment.

{¶ 26} Lastly, although appellant alludes to the Court of Claims' subsequent consideration of appellant's brief in opposition to summary judgment and attached exhibits in its decision, we find and appellant offers no authority to support overturning a trial court's grant of a motion to strike an untimely response to summary judgment because of the trial court's consideration of the response and exhibits as a part of the court's alternative, "even if" style of analysis. (Jan. 30, 2017 Decision at 2.) As such, appellant has not met her burden to affirmatively demonstrate error in this regard on appeal. *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11; *see also* App.R. 16(A).

{¶ 27} Because we find the Court of Claims did not err in striking appellant's brief in opposition to summary judgment, appellant's arguments regarding the exhibits attached to the brief and her attempt to supplement her brief are moot. We will not consider appellant's memorandum in opposition to summary judgment and exhibits in deciding appellant's first assignment of error regarding the merits of summary judgment.

{¶ 28} Accordingly, appellant's second assignment of error is overruled.

## B. First Assignment of Error

{¶ 29} Under her first assignment of error, appellant asserts that the Court of Claims erred in granting summary judgment in favor of Miami on her negligence claim. For the following reasons, we disagree.

{¶ 30} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293. The nonmoving party may not rest on the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 31} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Gabriel* at ¶ 12, citing *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 32} To prevail on her negligence claim, appellant must prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Beair v. KFC Natl. Mgt. Co.*, 10th Dist. No. 03AP-487, 2004-Ohio-1410, ¶ 8; *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). " 'If the party moving for summary judgment in a negligence action can point to evidence illustrating that the nonmoving party will be unable to prove any one of these elements, then the movant is entitled to judgment as a matter of law.' " *Chilton-Clark v. Fishel*, 10th Dist. No. 16AP-76, 2016-Ohio-7135, ¶ 11, quoting *Second Natl. Bank of Warren v. Demshar*, 124 Ohio App.3d 645, 648 (11th Dist.1997).

{¶ 33} Miami moved for and the Court of Claims granted summary judgment based on appellant being unable to prove duty as a matter of law. "The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence." *Martin v. Lambert*, 4th Dist. No. 12CA7, 2014-Ohio-715, ¶ 17. Generally, "[a] defendant's duty to a plaintiff depends on the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 22, citing *McCoy v. Kroger Co.*, 10th Dist. No. 05AP-7, 2005-Ohio-6965, ¶ 7, and *Menifee* at 77.

{¶ 34} Ordinarily, under Ohio law, there is no duty to prevent a third person from causing harm to another absent a special relationship between the parties or a duty imposed by statute. *Slagle v. White Castle Sys., Inc.*, 79 Ohio App.3d 210, 216 (10th Dist.1992) (explaining that, typically, a person has no duty to act affirmatively for the protection of others); *Desir v. Mallett*, 10th Dist. No. 14AP-766, 2015-Ohio-2124, ¶ 22; *Wheeler v. Ohio State Univ.*, 10th Dist. No. 11AP-289, 2011-Ohio-6295, ¶ 17. If a special relationship exists by statute or common law, then a party may be subjected to liability for harm caused to another only if the criminal act of the third party was foreseeable. *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 134 (1995) ("[f]oreseeability alone is insufficient to create liability"); *Wagner v. Ohio State Univ. Med. Ctr.*, 188 Ohio App.3d 65, 2010-Ohio-2561, ¶ 24 (10thDist.) ("Even if an injury is foreseeable, there may not be a duty to act."); *Slagle* at 216 ("[t]he mere fact that harm to another is a foreseeable consequence of one's failure to act does not, in and of itself, impose a duty to [act affirmatively for the protection of others]"). "Furthermore, '[b]ecause criminal acts are

largely unpredictable, the totality of the circumstances must be "somewhat overwhelming" in order to create a duty.' " *Wheeler* at ¶ 17, quoting *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, ¶ 7, quoting *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 193-94 (8th Dist. 1990).

{¶ 35} Both parties in this case do not dispute that Ohio courts recognize that an institution of higher learning has a special relationship to its students as a property owner; students are deemed "business invitees" of the institution. *Desir* at ¶ 23, citing *Wheeler* at ¶ 17 (using, in a case of student-on-student sexual assault, a student victim's legal status as a business invitee while on campus to analyze her negligence claim). Under premises liability law, "a business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." *Simpson* at 135. However, "[t]he duty does not extend to premises not in the possession and control of the business owner." *Id.*; *Albright v. Univ. of Toledo*, 10th Dist. No. 01AP-130 (Sept. 18, 2001) (holding that, regardless of foreseeability of a traffic accident following a campus event, the university's duty of care to a business invitee no longer existed once that business invitee left the campus).

{¶ 36} In the instant case, appellant argues that Miami "owed a duty of care to protect appellant from foreseeable criminal conduct." (Appellant's Brief at 31.) Specifically, appellant first contends that under the established law whereby universities and students act within a premises owner/business invitee relationship, Miami had a legal duty to warn her of or protect her from A.C.'s foreseeable criminal conduct "every time she stepped onto campus" or into the class that she shared with A.C. (Appellant's Brief at 33.)

{¶ 37} Contrary to appellant's argument, it is apparent from *Simpson* and its progeny that a plaintiff's presence on premises in the possession and control of the defendant at the time of the injury determines whether a negligence cause of action under a premises liability theory is applicable. *Id.* at 135. *See also Martin* at ¶ 35-36 (finding premises liability theory had no application to fact pattern where property owner did not have possession and control of premises where injury occurred). Here, while it is true that Miami owed appellant a duty as a business invitee while she was on campus, the

harm in this case occurred off campus at a location not in the possession and control of Miami. Therefore, appellant's status as a business invitee while on campus cannot serve as a special relationship under negligence law on these facts. As a result, under *Simpson*, we need not reach whether A.C.'s off-campus sexual assault of appellant in 2011 was foreseeable based on the 2008 and 2009 allegations of sexual misconduct.

{¶ 38} Appellant next contends that Miami owed her a duty of care, notwithstanding the fact the sexual assault occurred off campus at a location not in the possession and control of Miami, due to (1) the student-university relationship, (2) the fact that Miami's code of conduct extended to A.C.'s off-campus conduct and A.C. was subject to the university's discipline and control, (3) Miami's obligation pursuant Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681 et seq. ("Title IX"), to protect students from off-campus assaults, and (4) Miami's enabling of A.C.'s misconduct by not following its own code of conduct and permitting A.C. to remain as a student when it had knowledge of A.C.'s sex crimes.[1]

{¶ 39} Regarding her first contention, appellant cites to the Restatement of the Law 3d, Torts: Physical & Emotional Harm, Section 40 (2012), as legal support for the student-university relationship as a source to find a duty here. Under that section, "a school with its students" is one of the enumerated special relationships which give rise to an affirmative duty of reasonable care. Restatement, Section 40(b)(5). However, the restatement text also provides that duty only arises "within the scope of the relationship." Restatement, Section 40(a). The comments explain that this duty generally arises for students while at school or involved in school activities and specifies that as to higher education institutions, courts have imposed such a duty "at least with regard to risks from conditions on the college's property or risks created by the acts of others on the confines of college property," likening the relationship back to the premises liability context. Restatement, Section 40, Comment l. Appellant provides and we find no legal support that Ohio has adopted the Restatement, Section 40(b)(5), to impose a duty in negligence on a higher education institution with regard to its students which reaches beyond university activities or premises under its possession and control.

---

[1] We have grouped the arguments set forth in appellant's appellate brief for clarity.

{¶ 40} Relatedly, as discussed by Miami and the Court of Claims, we find no authority establishing that colleges and universities act "in loco parentis" with respect to their students to impose a duty in negligence out of that relationship alone. *See Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 737 (10th Dist.1996) ("the relationship of in loco parentis is established when a person assumes the responsibilities incident to a parental status, including custody and support of the child"); *State v. Funk*, 10th Dist. No. 05AP-230, 2006-Ohio-2068, ¶ 54-71 (discussing meaning of in loco parentis in context of defining an offender under a criminal sexual battery statute). Rather, this court has instead characterized the student-university relationship in business terms. *See, e.g., Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043, ¶ 23 ("When a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature."); *Simpson* at 135 (describing business invitee status of students on a university's premises). Considering the above, we disagree that appellant's status as a student of Miami establishes a special relationship under negligence law.

{¶ 41} Appellant's second contention focuses on Miami's relationship to A.C. Appellant implies that a university's ability to consider a student's off-campus conduct in disciplining the student correspondingly imposes to an ability and/or duty in negligence to control its students' actions off campus. While we agree that a university's policies or code of conduct may reach a student's off-campus conduct, we do not believe that a university's ability to discipline a student for off-campus behavior equates to the university assuming a duty to others under negligence law for its students' off-campus criminal activity. As provided above, we find no authority establishing that a university acts "in loco parentis" with respect to their students to impose a duty to control the conduct of the student in negligence. *Evans*; *Savoy*. Appellant fails to explain or support her argument with legal authority to the contrary. As such, appellant has not met her burden to affirmatively demonstrate error in this regard on appeal. *Watkins* at ¶ 11; *see also* App.R. 16(A).

{¶ 42} Appellant's third contention suggests that Miami's statutory responsibilities under Title IX establish a duty actionable under a civil negligence cause of action. Appellant argues that Title IX extends to off-campus conduct and that federal court cases

have ruled that a student who is a victim of sexual harassment by another student has a private cause of action against the school under Title IX. She cites to the Restatement of the Law 3d, Torts, Section 38 (2012), *Davis v. Monroe Cty. Bd. of Edn.*, 526 U.S. 629 (1999), and *Vance v. Spencer Cty. Pub. School Dist.*, 231 F.3d 253, 258 (6th Cir.2000), in support of her argument.

{¶ 43} Title IX provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a). The Restatement, Section 38, states that "[w]hen a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty." The comments to that section provide that state courts may rely on federal statute or regulations to recognize an affirmative duty in tort law but only if the federal provision does not preempt state tort-law liability. The comments distinguish implied private causes of action under a statute from judicially recognized common-law tort claims, noting that each may have different remedies and affirmative defenses. Restatement, Section 38, Comment c. *See also* Restatement, Section 40, Comment l.

{¶ 44} The cases cited by appellant in support of her argument establish that a student who is sexually harassed by another student has a private cause of action against the school under Title IX in certain circumstances. In *Davis*, the petitioner alleged that the county school board and school officials' deliberate indifference to her classmate's persistent sexual advances created an intimidating, hostile, offensive, and abusive school environment that violated Title IX. In reversing the federal district court's dismissal of the petitioner's action, the United States Supreme Court held that "[a] private Title IX damages action may lie against a school board in cases of student-on-student harassment, but only where the funding recipient is deliberately indifferent to sexual harassment, of which the recipient has actual knowledge, and that harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at paragraph one of the syllabus. *Vance*, also cited by appellant, likewise addresses a Title IX claim based on student-on-student sexual harassment.

{¶ 45} Like the Restatement, Section 38, Ohio law has recognized that the duty element of negligence may be established by legislative enactment. *Kleisch v. Cleveland State Univ.*, 10th Dist. No. 05AP-289, 2006-Ohio-1300, ¶ 10; *Slagle* at 216. However, the cases cited by appellant only establish that in certain severe circumstances, a private cause of action exists under Title IX for student-on-student sexual assaults. Appellant provides no precedent establishing that Title IX also gives rise to a common-law tort duty for an off-campus assault under Ohio negligence law and provides no argument or legal support regarding federal preemption. In her complaint, appellant does not bring a cause of action under Title IX, allege a duty under Title IX, or mention the federal statutes whatsoever. Considering all the above, we find appellant's argument unpersuasive and decline to find that Miami's responsibilities under Title IX gave rise to a common-law duty to support appellant's negligence claim in this case.

{¶ 46} Appellant's fourth contention encompasses several arguments centered on Miami's alleged failure to act on its knowledge of A.C.'s prior sex crimes. Appellant implies that either Miami's failure to act in accordance with its own polices in and of itself imparts a duty or that Miami's inaction essentially created a dangerous condition such that a duty of care arose to appellant. Appellant cites to Restatement of the Law 3d, Torts, Section 19 (2010), and Restatement of the Law 2d, Torts, Section 302(B) (1965), for the proposition that the conduct of a defendant, for example bringing a person into contact with a third party the defendant knows or should know to be likely to commit intentional misconduct, can increase the likelihood of injury so as to impose a duty under negligence law.

{¶ 47} At the outset, we disagree with appellant's characterization of Miami's knowledge of A.C.'s "history of committing sex crimes." (Appellant's Brief at v, 1.) This is not a case where a plaintiff alleges that a university failed to act on information that one of its students had been convicted of a sex crime or failed to act on its own internal finding that one of its students had committed a sex crime. The evidence, viewed in a light favorable to appellant, is that Miami knew about *allegations* of several previous sex crimes and did not protect or warn other students based on those allegations.

{¶ 48} Furthermore, the essence of appellant's argument is Miami's alleged failure to act in accordance with its own written code of conduct, rules, and procedures. In Ohio,

a college or university that receives state funding is statutorily obligated to adopt, publish, and provide for the administration and enforcement of rules regulating the conduct of its students, faculty, staff, and visitors and may provide for the ejection, suspension, or expulsion of a person who violates such regulations.  R.C. 3345.21.  Only arrest or conviction of one of its students or employees triggers a statutory obligation to take certain, minimum actions.  R.C. 3345.22 and 3345.23.  For example, on arrest for any "offense of violence," including rape, sexual battery, and gross sexual imposition, the student must be afforded a hearing to determine whether the student should be immediately suspended from the college or university, and if found to have committed such an offense, the student is suspended unless conditions favoring strict disciplinary probation apply.  R.C. 3345.22 and 3345.23(D).  If the student is ultimately convicted, the student is dismissed.  R.C. 3345.22(E) and 3345.23.  The statute specifies that a student's commission of an offense of violence, including rape, sexual battery, and gross sexual imposition, is cause for dismissal or suspension where the offense "is committed on or affects persons or property on such college or university, or which offense is committed in the immediate vicinity of a college or university with respect to which an emergency has been declared and is in effect."  R.C. 3345.23(D).  The statutes are expressly written as base requirements rather than modifications or limitations on the college's or university's authority to impose and enforce rules and procedures not inconsistent with the statutes. R.C. 3345.23 and 3345.24.

{¶ 49} Appellant does not provide any argument or legal support showing that in Ohio, institutions of higher learning that adopt written rules and procedures aimed at protecting its students thereby assume a duty of care under negligence law or that the duty extends to criminal acts committed on premises and at activities outside the control of the university.  We independently find no support for imposing such a duty in this case and note that this district recognizes a breach of contract claim for students challenging a university's disciplinary process per its own written rules and policies.  *Savoy* at ¶ 23-26; *Behrend v. State*, 55 Ohio App.2d 135 (10th Dist.1977), paragraph two of the syllabus. Moreover, as provided by Miami, to find otherwise could have the undesirable effect of discouraging universities from establishing such rules and procedures to protect and provide a fair process to students.

{¶ 50} "If there is no duty, then no legal liability can arise on account of negligence." *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142 (1989). Considering all the above, we find because appellant was sexually assaulted on premises not within the possession or control of Miami, was not assaulted at a Miami-controlled activity, and no other special relationship or statutorily derived duty applies in this case, the threshold element of duty in appellant's negligence action cannot be established as a matter of law. Furthermore, Miami met its initial burden on summary judgment, and appellant has not set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293. Since no genuine issue of material fact remains to be litigated, Miami is entitled to judgment as a matter of law, and viewing the evidence most strongly in favor of appellant, reasonable minds can come to but one conclusion, that conclusion being adverse to appellant, summary judgment in favor of Miami is appropriate. Civ.R. 56.

{¶ 51} Accordingly, appellant's first assignment of error is overruled.

## IV. CONCLUSION

{¶ 52} Having overruled appellant's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

_____