[Cite as *Canfield v. United Airlines, Inc.*, 2021-Ohio-4460.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Paula Canfield et al., :

    Plaintiffs-Appellants, : No. 21AP-252
(C.P.C. No. 20CV-2604)

v. :

    (REGULAR CALENDAR)

United Airlines, Inc., :

    Defendant-Appellee. :

D E C I S I O N

Rendered on December 16, 2021

**On brief:** *DuPont & Blumenstiel, LLC,* and *Braden A. Blumenstiel*, for appellants. **Argued:** *Braden A. Blumenstiel.*

**On brief:** *Jaffe Raitt Heuer & Weiss, P.C., Scott R. Torpey,* and *Timothy J. O'Connell*, for appellee. **Argued:** *Timothy J. O'Connell.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, Paula Canfield and her husband William Canfield, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, United Airlines, Inc. ("United Airlines"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} This case arises from Ms. Canfield sustaining an injury to her left foot's big toe as she disembarked an airplane at John Glenn Columbus International Airport on July 2, 2016. In April 2020, the Canfields filed suit against United Airlines, Columbus Regional Airport Authority, John Glenn Columbus International Airport, and Airport Terminal Services, Inc. ("ATS"), alleging Ms. Canfield's injury resulted from the defendants'

tortious conduct.[1]  The Canfields voluntarily dismissed their claims against Columbus Regional Airport Authority, John Glenn Columbus International Airport, and ATS.  As to the remaining defendant United Airlines, the Canfields asserted negligence and loss of consortium claims.  They alleged Ms. Canfield's injury resulted from United Airlines failing to properly inspect and maintain the metal platform (also known as a mobile bridge adaptor) spanning the airplane doorway and jet bridge tunnel (also known as a jetway), and to warn her of the latent, unreasonably sharp edge on the platform.  In June 2020, United Airlines moved for summary judgment.  The summary judgment submissions included Ms. Canfield's deposition testimony detailing the circumstances surrounding her injury.

{¶ 3}  Ms. Canfield testified as follows.  She was scheduled to fly from John Glenn Columbus International Airport to Newark, New Jersey, at 8:20 p.m., on July 1, 2016.  The flight was repeatedly delayed due to weather issues in the East Coast, and the passengers ultimately boarded the airplane shortly after midnight.  When Ms. Canfield boarded the airplane, she was wearing open-toe sandals.

{¶ 4}  Approximately 15 minutes after Ms. Canfield and the other passengers boarded the airplane, the flight was canceled.  Ms. Canfield, carrying a handbag and another bag with a small dog in it, followed others in deplaning.  Because of all the delays, and then the flight cancelation, the passengers were anxious to leave the airplane and try to reschedule.

{¶ 5}  As Ms. Canfield deplaned and traversed the mobile bridge adaptor connecting the airplane doorway with the jetway, she "bumped" her left foot on its edge, which inflicted pain and caused her to "stumble a little bit." (Pls.' Ex. 2, Paula Canfield Dep. at 95, 100, attached to Pls.' Memo Contra Def.'s Mot. for Summ. Jgmt.)  At that moment, she did not realize she had been cut.  After deplaning, Ms. Canfield stepped to the side to wait for a bag she had checked at the gate, and she saw blood and a "gaping wound" on her toe.  (Pls.' Ex. 2 at 96.)  In addition to the laceration to the big toe, which caused nerve damage, Ms. Canfield's left foot sustained a contusion.  Ms. Canfield described the bruising that manifested later as "down the outside of [her] foot on the side by the big toe and then between the big toe and the toe next to it.  There was a big area." (Pls.' Ex. 2 at 175.)

---

[1] This was a refiled complaint.  The Canfields voluntarily dismissed the original case in January 2020.

{¶ 6}   Ms. Canfield reboarded the airplane to retrieve a handful of paper towels to place on the wound and soak the blood.  She looked down at the mobile bridge adaptor and photographed it, attempting to determine and document exactly what had caused the cut on her toe.  She testified that "[i]t looked like a sharp metal edge." (Pls.' Ex. 2 at 158.)  When Ms. Canfield was asked how she determined the edge of the mobile bridge adaptor was sharp, she explained, "I'm calling it sharp because it cut me."  (Pls.' Ex. 2 at 158.)  Ms. Canfield did not closely visually examine the edge of the mobile bridge adaptor or use her hands to physically touch it.  She noted that "short of getting down on the floor and looking at it to see, I mean, there's -- I don't know if there would be any way I could tell it was sharp, just looking at it." (Pls.' Ex. 2 at 61.)

{¶ 7}   In April 2021, the trial court granted United Airlines' summary judgment motion.  The Canfields timely appeal.

## II.  Assignments of Error

{¶ 8}   The Canfields assign the following errors for our review:

1. Trial Court erred by failing to abide by the applicable standard for motions for summary judgment by failing to view all underlying facts and evidence in a light most favorable to the plaintiff-appellant when it incorrectly determined plaintiff-appellant failed to provide evidence the premises was not in a reasonably safe condition.

2. The trial court erred by declaring defendant had no notice of a latent hazard and ignoring defendant's affirmative duties to inspect and maintain the premises to ensure the premises was in a reasonably safe condition for plaintiff-appellant, defendant-appellee's business invitee.

3. The trial court erred by dismissing plaintiff-appellant William Canfield's loss of consortium claim when it incorrectly dismissed plaintiff-appellant Paula Canfield's claims against defendant-appellee United Airlines.

4. The trial court erred by disregarding the presumption that applies as a result of defendant-appellee's failure to preserve the MBA that caused plaintiff-appellant's injuries.

### III.  Discussion

#### A.  Standard of Review – Summary Judgment

{¶ 9}   The Canfields generally challenge the trial court's granting of summary judgment in favor of United Airlines.  An appellate court reviews summary judgment under a de novo standard.  *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9.  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 10} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

#### B.  Analysis

{¶ 11} We first resolve the Canfields' fourth assignment of error.  In this assignment of error, the Canfields argue the trial court, in considering United Airlines' summary judgment motion, erred in not finding United Airlines spoliating the mobile bridge adaptor should result in the presumption that evidence related to it was unfavorable to United Airlines.  We are unpersuaded.

{¶ 12} Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence. *Black's Law Dictionary* 1409 (7th Ed.1999). Civ.R. 37 provides trial courts with broad discretion to impose sanctions upon a party who violates the rules governing the discovery process. *See Toney v. Berkemer*, 6 Ohio St.3d 455, 458 (1983). This may include drawing an inference unfavorable to a party that spoliates evidence. *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, ¶ 127. "Sanctions and causes of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later failed to provide the evidence without adequate explanation." *Cincinnati v. Triton Servs.*, 1st Dist. No. C-170705, 2019-Ohio-3108, ¶ 41.

{¶ 13} A party seeking a negative evidentiary inference due to spoliation must establish that (1) the evidence is relevant, (2) the offending party had an opportunity to examine the unaltered evidence, and (3) even though the offending party was put on notice of impending litigation, the evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the proponent. *Wentling v. David Motor Coach Ltd.*, 5th Dist. No. 2017CA00190, 2018-Ohio-1618, ¶ 37. Ohio courts require a "strong showing of malfeasance—or at least gross neglect—before approving [a negative evidentiary inference]." *Brokamp v. Mercy Hosp. Anderson*, 132 Ohio App.3d 850, 870 (1st Dist.1999).

{¶ 14} The Canfields' negative evidentiary inference claim required evidence that United Airlines engaged in some type of misconduct leading to the nonproduction of the mobile bridge adaptor during discovery. In response to an interrogatory, United Airlines indicated that it could not "identify the specific mobile bridge adaptor that allegedly caused the accident at issue in this case." (Pls.' Ex. 5, Def.'s Responses to Pls.' First Set of Interrogs. & Request for Production of Documents at 2, attached to Pls.' Memo Contra Def.'s Mot. for Summ. Jgmt.) The evidence also demonstrated that ATS owned the mobile bridge adapter involved in this case, and an ATS employee, Tracy Price, was responsible for inspecting and maintaining the mobile bridge adapter at issue. The Canfields argue that because the mobile bridge adaptor was not produced during discovery, the trial court should have presumed this evidence would have been favorable to their case against United Airlines. In support, they cite the Columbus Regional Airport Authority Police Department report,

completed on the day of the incident, which indicates Ms. Canfield "had laceration to bottom of large toe on left foot from stepping on the metal edge of small ramp placed inside the aircraft for passengers exiting the aircraft." (Pls.' Ex. 3, Police Report at 2, attached to Pls.' Memo Contra Def.'s Mot. for Summ. Jgmt.) In view of this report, the Canfields assert United Airlines should have been aware of the evidentiary importance of the mobile bridge adaptor. They also assert that ATS was United Airlines' agent, and therefore United Airlines was responsible for ATS not producing the mobile bridge adaptor in discovery.

{¶ 15} Even assuming an agency relationship between United Airlines and ATS concerning the mobile bridge adaptor, the Canfields presented no evidence reasonably demonstrating gross negligence by United Airlines, or ATS, as it relates to preservation of the mobile bridge adaptor. Preservation of the platform would have required its removal from use, and the police report does not indicate that Ms. Canfield's injury resulted from a defective or unreasonably dangerous condition. Further, Ms. Canfield was not prevented from inspecting the device as she deemed appropriate, immediately after she sustained the injury. In fact, Ms. Canfield did inspect the mobile bridge adaptor after she sustained her injury, taking at least two photographs of the platform. And there is no evidence that, prior to leaving the airport, Ms. Canfield requested that United Airlines, or ATS, set aside and remove from use the mobile bridge adaptor for further inspection or possible litigation. In sum, there simply is no evidence that United Airlines, or ATS, was grossly negligent as to the preservation of the mobile bridge adaptor. Because the Canfields' spoliation claim was not reflected by any evidence in the record, they were not entitled to a negative evidentiary inference concerning the mobile bridge adaptor.

{¶ 16} Accordingly, the Canfields' fourth assignment of error is overruled.

{¶ 17} Next, we address the Canfields' first and second assignments of error. Their first assignment of error alleges the trial court erred in granting summary judgment in favor of United Airlines as to Ms. Canfield's negligence claim because it did not construe all the evidence in a light most favorable to them. In their second assignment of error, the Canfields allege the trial court erred in finding United Airlines had no notice of the latent hazard and not finding United Airlines breached its duty to maintain the premises in a reasonably safe condition. These two assignments of error lack merit.

{¶ 18} To establish negligence, a plaintiff must prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *A.M. v. Miami Univ.*, 10th Dist. No. 17AP-156, 2017-Ohio-8586, ¶ 32. A plaintiff's failure to present evidence establishing any one of these elements will entitle the defendant to judgment. *Id.* Further, in a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. Here, Ms. Canfield was a business invitee. An owner or occupier of premises ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. *Dubenion v. DDR Corp.*, 10th Dist. No. 15AP-915, 2016-Ohio-8128, ¶ 7. Thus, United Airlines had a duty to maintain the premises in a reasonably safe condition and warn Ms. Canfield of any latent or hidden dangers. The Canfields failed to present evidence that United Airlines breached this duty.

{¶ 19} The Canfields contend the mobile bridge adaptor at issue was unreasonably dangerous because it had a latent "razor-sharp edge," and United Airlines should have warned her of this hazardous condition before she traversed this platform. (Appellants' Brief at 13.) In support, they cite Ms. Canfield's testimony that she saw "a sharp metal edge" on the mobile bridge adaptor, and the common knowledge that razor-sharp metal can lacerate human skin. We find, however, that even construed in favor of the Canfields, Ms. Canfield's testimony did not demonstrate the mobile bridge adaptor was unreasonably dangerous.

{¶ 20} The Canfields accurately cite Ms. Canfield's testimony that, when she reboarded the airplane to obtain paper towels and determine what caused the injury to her toe, she saw "a sharp metal edge" on the mobile bridge adaptor. In response to the follow-up question concerning how she determined the edge of the mobile bridge adaptor was sharp, she explained, "I'm calling it sharp because it cut me." When viewed in context, no reasonable person could construe her testimony as indicating that she actually viewed a sharp metal edge on the mobile bridge adaptor. Ms. Canfield's testimony indicated that whether the mobile bridge adaptor had a sharp edge was not observable from a standing position, but she did not view the adaptor any closer than that vantage point. Her post-injury inspection of the mobile bridge adaptor was limited to her standing and looking down at the device. In effect, Ms. Canfield acknowledged that she did not actually view a

sharp edge on the mobile bridge adaptor. Consistent with this acknowledgment, the photograph in the record that Ms. Canfield took of the mobile bridge adaptor does not enable a determination that any part of the platform's edge was unreasonably sharp and not just functionally thin.

{¶ 21} Therefore, when viewed in context, Ms. Canfield's testimony that there was "a sharp metal edge" on the mobile bridge adaptor was not based on her personal observation of that edge. Instead, she assumed its edge was unreasonably dangerous because she sustained the injury to her toe as she traversed it in her open-toe sandals. But the fact that Ms. Canfield sustained a toe injury while traversing the mobile bridge adaptor, albeit unfortunate, does not itself demonstrate the presence of an unreasonably dangerous condition. *See Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 388-89 (1950) (a plaintiff must show precisely "how and why an injury occurred—to develop facts from which it can be determined by the jury that the defendant failed to exercise due care and that such failure was a proximate cause of the injury. A verdict for plaintiff based on conjecture, guess, random judgment or supposition cannot be sustained."); *Freeman v. Value City Dept. Store*, 5th Dist. No. 2010 CA 00034, 2010-Ohio-4634, ¶ 15 ("Negligence will not be presumed and cannot be inferred simply because the accident occurred."). Based on the absence of any evidence demonstrating an unreasonably dangerous condition caused Ms. Canfield's injury, Ms. Canfield cannot prove her claim that United Airlines was negligent.

{¶ 22} For these reasons, we find the trial court properly granted summary judgment in United Airlines' favor as to Ms. Canfield's negligence claim. Consequently, we overrule the Canfields' first and second assignments of error.

{¶ 23} Lastly, we address the Canfields' third assignment of error, which challenges the trial court's granting of summary judgment in favor of United Airlines as to Mr. Canfield's loss of consortium claim. "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92-93 (1992); *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 80. Because United Airlines was entitled to summary judgment in its favor as to Ms. Canfield's negligence claim, it also was entitled to summary judgment in its favor as to Mr. Canfield's

loss of consortium claim. Consequently, we overrule the Canfields' third assignment of error.

## IV. Disposition

{¶ 24} Having overruled all four of the Canfields' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, J., concurs.
DORRIAN, P.J., dissents.

DORRIAN, P.J., dissenting.

{¶ 25} I respectfully dissent and would reverse the judgment of the trial court and remand for further proceedings.

{¶ 26} I dissent from the majority decision and would sustain the first assignment of error. In so doing, I note that when considering summary judgment, "[e]ven the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998). I further note that summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 27} Regarding the first assignment of error, I disagree with the majority's analysis at paragraph 21 and conclusions in paragraphs 19, 20, and 21. Even when viewed in the context the majority explains, construing the evidence and inferences in favor of the Canfields as the nonmoving party, at this motion for summary judgment stage of proceedings, I would find that a reasonable person could construe Ms. Canfield's testimony as indicating that a sharp metal edge on the mobile bridge adaptor was an unreasonably dangerous condition that proximately caused her injury.

{¶ 28} Because the majority overrules the first assignment of error, it did not address the second assignment of error. I would address the second assignment of error and consider whether the trial court erred by declaring United Airlines had no notice of a latent hazard.

{¶ 29} Here, I note that when considering summary judgment, the moving party "bears the *initial* burden of demonstrating that there are no genuine issues of material fact" by "point[ing] to evidentiary materials of the type listed in Civ.R. 56(C)." (Emphasis sic; emphasis omitted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "While the movant is not necessarily obligated to place any of these evidentiary materials in the record, the evidence must be in the record or the motion cannot succeed." *Id.* at 293. Civ.R. 56(E) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Thus, only after "the moving party has satisfied its initial burden [does] the nonmoving party [have] a *reciprocal* burden" to supply evidence as provided under Civ.R. 56(E) showing a genuine issue of material fact remains for trial. (Emphasis added.) *Id.* at 293.

{¶ 30} The trial court found the mobile bridge adaptor was "solely and exclusively owned, inspected, maintained and operated by Airport Terminal Services, Inc." (Decision at 6.) As support for this conclusion, the trial court cites to the "MSJ, Exh. B., No. 15 [and] Exh. C. UA0005, ¶¶ 2, 13." (Decision at 6.) United Airlines argues the same and points to this same evidence. United Airlines also argues that the Canfields failed to present any evidence showing that United Airlines had notice of any such defects. I do not believe that United Airlines satisfied its initial burden; therefore, I do not believe the Canfields had a reciprocal burden, at this motion for summary judgment stage, to present evidence that United Airlines had notice of defect.

{¶ 31} Exhibit B, attached to the affidavit of Timothy J. O'Connell which is attached to United Airlines motion for summary judgment, is an excerpt of United Airlines' responses to the Canfields' first set of interrogatories. At paragraph 15, it states:

> 15) Please state the name, address, and phone number of all owners and co-owners of the metal platform involved in plaintiff's accident.
>
> **ANSWER**:  Airport Terminal Services, Inc. (ATS)
>                      111 Westport Plaza Drive, Suite 400
>                      Saint Louis, Missouri 63146

(June 29, 2020 United Airlines' Mot. for Sum. Jgmt., O'Connell Aff., Ex. B at 2.) The Canfields presented no evidence to the contrary. Therefore, I would find the evidence in the record is sufficient to find in favor of United Airlines, at the motion for summary judgment stage of proceedings, that Airport Terminal Services, Inc. ("ATS"), not United Airlines, was the owner of the mobile bridge adaptor.

{¶ 32} However, I would find the evidence in the record is not sufficient to find in favor of United Airlines, at the motion for summary judgment stage of proceedings, that ATS solely and exclusively inspected, maintained, and operated the mobile bridge adaptor. Furthermore, I would find the evidence in the record is not sufficient to find in favor of United Airlines, at the motion for summary judgment stage of proceedings, on the issues of possession and/or control, therefore constructive notice as the parties have presented the issue.

{¶ 33} Exhibit C is an excerpt of "United Airlines IATA Standard Ground Handling Agreement (Simplified Procedure)" between United Airlines and ATS. The excerpt includes pages 1, 3, 6, 38, 43, of 102 pages. On page 1 it states "SEE EXHIBIT A for locations covered by this Agreement." (O'Connell Aff., Ex. C at UA0001.) There is no "Exhibit A" attached to the excerpt, therefore there is no evidence that this agreement covers the airport at issue in this case. On page 6 it states the "Handling Company agrees to provide all Services in accordance with the Service Level Agreement ("SLA") which is attached hereto as EXHIBIT B." (O'Connell Aff., Ex. C at UA0003.) There is no "Exhibit B" attached to the excerpt.

{¶ 34} Paragraph 2.1 on page 6 of the excerpt states:

> Handling Company will acquire, at its expense, any ground support equipment ("GSE") required to provide all of the Services at the locations set forth in EXHIBIT A, including all of the required equipment described in EXHIBIT N. Handling Company shall ensure that all GSE is routinely inspected and maintained in safe working order at all times. GSE costs, including fuel and maintenance, are solely the responsibility of Handling Company.

(O'Connell Aff., Ex. C at UA0003.)

{¶ 35} As indicated above, there is no Exhibit A attached to the excerpt. Also there is no Exhibit N attached to the excerpt. Therefore, there is no evidence that paragraph 2.1 applies to the airport at issue in this case, and there is no evidence that mobile bridge

adaptors are included in the definition of ground support equipment.  The absence of Exhibit A and Exhibit N also come into play when considering page 38 of the excerpt and the paragraph titled "GROUND EQUIPMENT."  It states:

> United will not provide any ground service equipment, maintenance, and/or fuel required to service United's aircraft, employees, and customers. The Handling Company is required to maintain and make available upon request of United, the Handling Company's locally documented maintenance and fueling program for its ground equipment. The Handling Company will maintain a sufficient level of safe and serviceable ground equipment * * *.

(O'Connell Aff., Ex. C at UA0004.)

{¶ 36} United Airlines points us in particular to Exhibit C, UA0005, in particular items 2 and 13.  Exhibit C, UA0005  is page 43 of 102 of the excerpt.  Page 42 is not in the record.  Furthermore, the top part of page 43 is redacted.  Page 43 states in relevant part:

> Gate Management Services:
>
> 1. Manage gate departure using United's proprietary system
>
> 2. Board aircraft according to United boarding standards
>
> * * *
>
> 13. Operate Jetbridge (using mobile bridge adapter where applicable)
>
> * * *

(O'Connell Aff., Ex. C at UA0005.)

{¶ 37} Because the top of page 43 is redacted and page 42 is not provided, no context is provided to "Gate Management Services."  Nothing in the excerpt provided to the trial court states who is responsible for providing the Gate Management Services outlined at page 43.  Furthermore, even if we were to assume that the excerpt is sufficient evidence to find that ATS is responsible for the Gate Management Services, nothing in the excerpt provided to the trial court addressed "United's boarding standards."

{¶ 38} With all of this in mind, I would sustain the Canfields' second assignment of error, as well as the first assignment of error.  Because I would sustain the first and second

assignments of error, I would also sustain the third assignment of error as the trial court simply held that it was granting the motion for summary judgment in favor of United Airlines on the loss of consortium claim because it granted summary judgment in favor of United Airlines on the negligence claim.

{¶ 39} Finally, because I would sustain the first and second assignments of error, I would decline to address the fourth assignment of error regarding the Canfields' argument that spoliation of the evidence entitles them to a favorable presumption on the negligence claim.[2]

{¶ 40} Accordingly, I would sustain the first, second, and third assignments of error and decline to address the fourth assignment of error.  I would reverse the judgment of the trial court and remand this case to the trial court.

_____

[2] On remand, the trial court could reconsider the issue of whether spoliation results in a presumption in favor of the Canfields on the negligence issue. The court could also consider evidence in the record at Exhibit C, page 38 of the excerpt, in a paragraph titled "INCIDENT HANDLING AND REPORTING," there are two subparagraphs that state: "3. Investigations:  The Handling Company is expected to cooperate in any ongoing investigation that may ensue due to damage caused by negligence. 4. Written Report: Within five (5) days of the incident, the Handling Company shall provide United a written summary of the incident and a written action plan to avoid future incidents. If so requested by United, the Handling Company will participate in a damage review board investigation."

Another paragraph titled "DOCUMENT RETENTION/ACCESSABILITY" [sic] states: "United reserves the right of access, at no cost, to the Handling Company's * * * maintenance records."