## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ESTEPHEN CASTELLON | Case No. 2024-00507JD |
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Robert Van Schoyck |
| v. | |
| | <u>DECISION</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} On July 7, 2025, Plaintiff filed a Motion for Summary Judgment pursuant to Civ.R. 56(A), and Defendant filed a Motion for Summary Judgment pursuant to Civ.R. 56(B). On August 4, 2025, each party filed a Response, and on August 8, 2025, each party filed a Reply. For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## STANDARD OF REVIEW

{¶2} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C):

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being

entitled to have the evidence or stipulation construed most strongly in the
party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St. 3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id*. at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

## BACKGROUND

{¶4} Plaintiff, formerly an inmate in the custody and control of Defendant, brings this claim for defamation, abuse of process, intentional tort, negligence, and "breach of contract/promissory estoppel". (Complaint, ¶ 13.) Plaintiff contends that on September 20, 2023, he wrote kites to the warden and deputy warden at Noble Correctional Institution complaining about the cancellation of events that he had organized for Hispanic Heritage Month. (*Id.* at ¶ 12.) It is undisputed that, as a result, Major Sean Frizzell met with Plaintiff on September 22, 2023, and issued him a conduct report charging him with violating institutional rules. In the narrative "Supporting Facts" section of the conduct report, Major Frizzell wrote as follows:

> On the above date and time I received a communication that had been sent by Castellon 704329 as a kite to Wardens Office. The following threatening statement was located in the kite "I sent to Auftenkamp; detailing the reason we as a community will not continue to be patronized. All the events with

any substance was shut down and the banquet was the final straw he wants to give the appearance of acting in good faith but the Truth is he despises all of it. I'm done with the benefit of any doubt.". With the implied threats contained in the kite I had Castellon escorted to the Ops Wing to discuss. After Castellon arrived in my Office I asked him who he was referring to as "we" and he said my community. He was very arrogant and portrayed himself as a "leader" of others here the institution. As I was questioning Castellon about this he continued to imply that "his people" would not put up with it. I continued to remind him that he was an individual who had written this as an individual. After 10 minutes of a conversation where he continued with the implied threats I placed him in Restricted Housing. It was clear he was going to continue make vague threats against staff and the normal operations of NCI.

The Rules Infraction Board (RIB) at Noble Correctional Institution found Plaintiff guilty of the rules violations and sanctioned him. (Complaint, ¶ 12.) Soon afterward, Defendant raised Plaintiff's security level and transferred him to Richland Correctional Institution. (*Id.*) The RIB determination, though, was ultimately reversed by Defendant's Legal Services office on appeal. (*Id.*)

{¶5} According to Plaintiff, the Institutional Inspector at Richland Correctional Institution, Kelly Rose, "refused to give [him] copies of the documents necessary to properly file this complaint." (*Id.*) Plaintiff relates that he later obtained the requested documents after filing a mandamus action. (*Id.*)

{¶6} Plaintiff brings this action to recover monetary damages under theories of defamation, abuse of process, intentional tort, negligence, and "breach of contract/promissory estoppel". (*Id.* at ¶ 13.) On November 22, 2024, the Court ruled on a Motion to Dismiss filed by Defendant, granting it, in part, for lack of jurisdiction "to the extent Plaintiff's Complaint can be construed to allege a claim challenging his increased security status or transfer from one institution to another".

**LAW AND ANALYSIS**

**Defamation**

{¶7} Plaintiff's defamation claim is based upon statements that Major Frizzell wrote in the conduct report. In his Motion for Summary Judgment, Plaintiff argues that Major Frizzell defamed him "specifically [through] the accusations that Mr. Castellon made 'implied threats' and 'vague threats against staff and the normal operations of NCI'". (Plaintiff's Motion, p. 4.)

{¶8} To establish defamation, "a plaintiff must show (1) the defendant made a false statement, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff was injured as a result of the statement, and (5) the defendant acted with the required degree of fault." *Webber v. Ohio Dept. of Pub. Safety*, 2017-Ohio-9199, ¶ 36 (10th Dist.).

{¶9} In their motions and respective briefs, Plaintiff argues that he can establish the foregoing elements, while Defendant argues that Plaintiff cannot show that the statements at issue were false, among other things.

{¶10} As to the first element for establishing defamation, requiring that the defending party made a false statement, Plaintiff argues that Major Frizzell's statements in the conduct report accusing him of making implied or vague threats were false, while Defendant argues that these statements were "the opinions and impressions of Major Frizzell, which are not disprovable and cannot form the basis of a defamation claim." (Defendant's Motion, p. 6.)

{¶11} "Under Ohio law, for a statement to be defamatory, it must be a statement of fact and not of opinion." *Spingola v. Sinclair Media, II, Inc.*, 2006-Ohio-6950, ¶ 22 (10th Dist.). "The fact versus opinion issue presents a question of law for a court to determine." *Mehta v. Ohio Univ.*, 2011-Ohio-3484, ¶ 28 (10th Dist.). "To answer this question, a court must determine whether a reasonable reader will perceive the statement as a fact or an opinion." *Id.*

{¶12} "Courts apply a totality-of-the-circumstances test to determine whether a statement is a statement of fact or of opinion." *Gilson v. Am. Inst. of Alternative Med.*, 2016-Ohio-1324, ¶ 53 (10th Dist.). "In reviewing the totality of the circumstances, courts should examine the following four factors: (1) the specific language used, (2) whether the

statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appears." *Id.* "While each factor must be considered, the weight afforded to each varies based upon the circumstances presented in each case." *Mehta* at ¶ 29.

{¶13} There is no dispute that, as Major Frizzell documented in his conduct report, Plaintiff wrote a kite to the warden and deputy warden at Noble Correctional Institution criticizing the cancellation of Hispanic Heritage Month events, including a banquet, which he said "was the final straw", and Plaintiff further wrote, among other things, that "we as a community will not continue to be patronized" and "I'm done with the benefit of any doubt."

{¶14} Major Frizzell avers in an affidavit submitted by Defendant that he is the Chief of Security at Noble Correctional Institution and that the kite was forwarded to him for review, and upon reading it he "had concerns that the words [Plaintiff] had written constituted implied threats to the security of the institution, so on September 22, 2023, I had him escorted to my office to discuss the issue."  (Frizzell Affidavit, ¶ 3-5.)  In his deposition, a transcript of which was submitted by Defendant, Plaintiff testified that at the meeting he told Major Frizzell that he did not intend to threaten anyone but admitted that he "wrote the kites out of frustration."  (Plaintiff's Deposition, p. 77.)  Plaintiff admitted in his deposition that he communicated some of his concerns in the kite "inartfully". (Plaintiff's Deposition, p. 87.)  In an affidavit, Plaintiff avers that the purpose of sending the kite was not to threaten anyone, but to "file a discrimination claim against Deputy Warden Aufdenkampe, regarding the Hispanic inmate population."  (Plaintiff's Affidavit, ¶ 6.)  According to Plaintiff, he acted as "the liaison for the Hispanics" at the institution and he told Major Frizzell at their meeting that when he wrote "we" in the kite, as in "we as a community will not continue to be patronized," he spoke for the entire Hispanic population there.  (Plaintiff's Deposition, p. 76.)  But Plaintiff denies portraying himself "as a leader in any threatening manner."  (Plaintiff's Affidavit, ¶ 8.)

{¶15} Major Frizzell avers in his affidavit that he "interpreted Mr. Castellon's kite, and his statements and behavior during our meeting as a violation of DRC rule 2.3, which prohibits extortion by threat of violence or other means towards another person, and rule 2.4, which prohibits use of a telephone, mail, electronic devices, or any other form of

communication to threaten, harass, intimidate, or annoy another person." (Frizzell Affidavit, ¶ 6.) According to Major Frizzell, the resulting conduct report that he issued reflected his impressions and interpretations of Plaintiff's conduct. (Frizzell Affidavit, ¶ 9.)

{¶16} Examining the factors for determining whether a statement is fact or opinion, first, regarding the specific language used, "it is often appropriate to begin an assessment of the totality of the circumstances by analyzing 'the common usage or meaning of the allegedly defamatory words themselves.'" *Wampler v. Higgins*, 93 Ohio St.3d 111, 127 (2001), quoting *Ollman v. Evans*, 750 F.2d 970, 979-980 (D.C. Cir. 1984). At issue here are Major Frizzell's statements in the conduct report characterizing Plaintiff's statements in the kite as "threatening" and, referring to both the statements made in the kite and at their meeting, describing them collectively as "implied threats" and "vague threats". In *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 283 (1995), the Supreme Court of Ohio identified statements conveying "punishable . . . disciplinary conduct" as an example of potentially actionable language, and in this case Major Frizzell's statements were made in the course of charging Plaintiff with violating institutional rules, for which he could be punished if found guilty by the RIB. Notably, however, Major Frizzell stated that the nature of the threat he interpreted from Plaintiff's communications was "implied" or "vague" rather than being explicit, and "'statements that are "loosely definable" or "variously interpretable" cannot in most contexts support an action for defamation.'" *Wampler*, 93 Ohio St.3d at 128, quoting *Ollman*, 750 F.2d at 980.

{¶17} Second, regarding whether the statement is verifiable, "[s]tatements lacking a plausible method of verification are more obviously opinion because they do not rest upon either implied or explicit fact." *Cooke v. United Dairy Farmers, Inc.*, 2005-Ohio-1539, ¶ 24 (10th Dist.). Plaintiff argues that Major Frizzell's statements accusing him of making "'implied threats' is an objective falsehood, as proven by the appeals decision" made by Defendant's Legal Services office. (Plaintiff's Response, p. 2.) But the Legal Services Decision on Appeal, accepting Major Frizzell's characterization that the "threats were vague and implied", simply "found no *credible* threat" sufficient to affirm the rules infractions that had been found by the RIB. (Emphasis added.) (Plaintiff's Response, Exhibit D.) Moreover, courts have concluded that statements describing another's communications or conduct as 'threatening' cannot support a defamation claim. *See*

*Hernandez v. Scottsdale Hotel Group LLC*, 2020 U.S.Dist. LEXIS 217646 (D.Ariz. Nov. 20, 2020) (statement that plaintiff's email was "threatening"); *Galland v. Johnston*, 2015 U.S.Dist. LEXIS 34960 (S.D.N.Y. Mar. 19, 2015) (statements that plaintiff's emails were "threatening and disturbing" and that plaintiff "chooses to run his business in a threatening manner"); *Watson v. C.P. Name Illegible Member of the Wisconsin Nursing Bd.*, 2023 U.S.Dist. LEXIS 193875 (E.D. Wis. Oct. 30, 2023) ("a person's opinion that another's writing appears '. . . threatening . . .' is a matter of opinion rather than one of fact"); *Cornwell v. Dairy Farmers of Am., Inc.*, 369 F.Supp.2d 87, 110 (D. Mass) (statement that employee's behavior was "threatening" was opinion).

{¶18} As to the third factor, i.e. the general context of the statement, the court "must examine more than just the defamatory statements in isolation to determine if the 'language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer.'" *Mehta*, 2011-Ohio-3484, at ¶ 39 (10th Dist.), quoting *Wampler*, 93 Ohio St.3d at 130. Here, in the narrative portion of the conduct report Major Frizzell explained that a communication sent by Plaintiff to the warden's office was forwarded to his attention and that he felt the communication contained a threatening statement. Major Frizzell further explained in the conduct report that he consequently met with Plaintiff about the matter and felt that statements Plaintiff made to him at the meeting were similar in nature. Major Frizzell thus identified the communications by Plaintiff that he subjectively considered to be threatening. Upon review, the general context of Major Frizzell's statements about Plaintiff using threatening language tend to indicate to the reasonable reader that they were Frizzell's opinion.

{¶19} Finally, the fourth factor, which concerns the broader context of the statement, requires the court to "examine 'the broader social context into which the statement fits. Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.'" (Emphasis removed.) *Wampler* at 131, quoting *Ollman*, 750 F.2d at 983 (D.C. Cir. 1984). "For instance, in both *Vail* and *Ollman* the courts said that since a statement was on a newspaper's opinion pages, then an average reader was less likely to believe that the statement is one of objective fact." *Rothschild v. Humility of Mary Health Partners*, 2005-Ohio-5481, ¶ 27 (7th Dist.). In this case, Major Frizzell made the statements at issue in

the context of being Chief of Security at a correctional institution and being tasked with reviewing and investigating certain communications that Plaintiff had made to officials at the institution. (Frizzell Affidavit, ¶ 3-4.) Major Frizzell was responsible for enforcing institutional rules which forbid, among other things, threats of violence or the use of any form of communication to threaten another. (*Id.* at ¶ 6-7.) Major Frizzell's statements appeared in the "Supporting Facts" section of a conduct report charging an inmate with rules violations that would come before the institutional RIB for a hearing.

{¶20} Considering the totality of the circumstances, while the statements at issue appear in the "Supporting Facts" section of the conduct report, it is apparent from the general context of the statements that they were an expression of Major Frizzell's opinion about Plaintiff's communications. Major Frizzell identified in the conduct report certain communications by Plaintiff and then expressed his belief that those communications amounted to a vague or implied threat. Plaintiff is incorrect in asserting that the Legal Services Decision on Appeal disproves Major Frizzell's subjective view that the underlying communications amounted to a vague or implied threat, and Plaintiff does not otherwise explain how that belief by Major Frizzell can be verified. Applying the factors, reasonable minds can only conclude that Major Frizzell's characterization of Plaintiff's statements as "threatening" was opinion, not an actionable statement of fact.

{¶21} Because there is no genuine issue of material fact that Plaintiff cannot show that Major Frizzell made a false statement of fact, Plaintiff cannot prevail on his claim of defamation.

{¶22} Defendant argues additionally that, even if it were assumed that Major Frizzell's statements were false and defamatory, the statements are not actionable because they are protected by qualified privilege. "One of the defenses to a defamation claim is one of qualified privilege, in which the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose." *DeGarmo v. Worthington City Schools Bd. of Ed.*, 2013-Ohio-2518, ¶ 18 (10th Dist.). "'A qualified privilege is an affirmative defense to a claim of defamation.'" *Hill v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-561, ¶ 17 (10th Dist.), quoting *Morrison v. Gugle*, 142 Ohio App.3d 244, 258 (10th Dist. 2001).

{¶23} Concerning the nature of communications subject to a qualified privilege, the Tenth District Court of Appeals has explained:

> The purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 331 N.E.2d 713 * * *. A qualified privilege exists when a statement is: made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Fischer v. Kent State Univ.*, 2015-Ohio-3569, ¶ 25 (10th Dist.) (quotations omitted).

{¶24} "When alleged defamatory statements have occurred in a business context, by someone whose job gives that person a legitimate interest in the matter, they are subject to a qualified privilege when the circumstances exist or are reasonably believed by the defendant to exist." *Brunsman v. W. Hills Country Club*, 2003-Ohio-891, ¶ 23 (1st Dist.).

{¶25} Defendant provided affidavit testimony that Major Frizzell is the Chief of Security at Noble Correctional Institution. (Frizzell Affidavit, ¶ 3). In the course of his job duties, Major Frizzell reviewed a kite that Plaintiff sent to the warden's office, and he subsequently met with Plaintiff because he had concerns that what Plaintiff wrote in the kite constituted implied threats to the security of the institution. (*Id.* at ¶ 4-6.) After meeting with Plaintiff, Major Frizzell interpreted Plaintiff's written and oral communications as a violation of institutional rules. (*Id.* at ¶ 6.) As a result, Major Frizzell authored the conduct report at issue in this case; conduct reports are used to inform necessary staff of rule violations and to maintain the safety and security of the institution. (*Id.* at ¶ 7.) When submitting the conduct report, Major Frizzell "communicated only with necessary DRC staff as required by DRC policy." (*Id.* at ¶ 11.) To the best of his knowledge, Major Frizzell has never made any untrue statements about Plaintiff. (*Id.* at ¶ 12.) According to Major Frizzell, any statements he made about Plaintiff were part of his official duties and to

maintain the safety and security of Noble Correctional Institution, and he denies acting with malicious purpose. (*Id.* at ¶ 12-13.)

{¶26} Upon review, the evidence presented by Defendant demonstrates the essential elements of a qualifiedly privileged communication, being that Major Frizzell made the statements at issue in good faith, with an interest to be upheld (i.e. the security of the correctional institution), the statements were limited in their scope to that purpose, and they were made upon a proper occasion and published in a proper manner to proper parties only. *See Watley v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-3691, ¶ 30 (10th Dist.) (corrections officer's statement in a conduct report were made in connection with Defendant's "interest and duty in ensuring the safety and security of the institution, its prisoners, and its employees").

{¶27} In response to Defendant's Motion for Summary Judgment, Plaintiff argues that "Defendant's qualified privilege defense is forfeited by actual malice". (Plaintiff's Response, p. 4.)

{¶28} "A qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant." *Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, ¶ 18 (10th Dist.). "'In a qualified privilege case, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.'" *Jackson v. Columbus*, 2008-Ohio-1041, ¶ 9, quoting *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus.

{¶29} "The phrase 'reckless disregard' applies when a publisher of defamatory statements acts with a 'high degree of awareness of their probable falsity' or when the publisher 'in fact entertained serious doubts as to the truth of his publication.' (Internal citations omitted.)" *Hill*, 2021-Ohio-561, at ¶ 19 (10th Dist.), quoting *Jackson* at ¶ 10. ""It is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity.""" *Watley*, 2008-Ohio-3691, at ¶ 33 (10th Dist.), quoting *Jacobs* at 119, quoting *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116 (1980). "Evidence that establishes, at best, the publisher 'should have known' of the alleged falsity of the statement is insufficient to establish actual malice." *Varanese v. Gall*, 35 Ohio St.3d 78, 82 (1988).

{¶30} Plaintiff points to Defendant's Legal Services Decision on Appeal as evidence of malice, arguing that it found Major Frizzell's statements were "baseless . . . [, c]onstituting an act made with knowledge of or a reckless disregard for the truth." (Plaintiff's Response, p. 4.) But the Legal Services Decision on Appeal did not conclude that Major Frizzell's statements about Plaintiff making implied or vague threats were baseless; it determined there was insufficient evidence to substantiate a *credible* threat as to support the RIB's decision finding Plaintiff guilty of institutional rules violations. Plaintiff also submitted an affidavit in which he avers that a corrections officer who escorted him to the meeting with Major Frizzell had a body-worn camera, and he argues that Defendant's "failure to preserve or produce" camera footage of the meeting constituted spoliation of evidence, as such footage "would have exposed the falsity of Major Frizzell's report." (*Id.*; Plaintiff's Affidavit, ¶ 7,9.) To the extent Plaintiff may seek a negative evidentiary inference concerning camera footage, however, Plaintiff does not point to evidence demonstrating that Defendant engaged in some type of misconduct leading to the nonproduction of such footage in discovery. *See Canfield v. United Airlines, Inc.*, 2021-Ohio-4460, ¶ 13-14 (10th Dist.).

{¶31} Plaintiff also relies on the decision of the Tenth District Court of Appeals in *Hill*, which involved a defamation claim against Defendant based on statements in a conduct report that implicated an inmate in an illegal drug ring within a prison. The appeals court concluded that an issue of fact existed at the summary judgment stage as to whether the corrections officer knew the statements were false because, although the officer wrote in the conduct report that his statements were based on video evidence and confidential sources, the officer did not produce any video evidence or information from a confidential source at the RIB hearing, and under the circumstances it was possible to infer the officer did not have evidence to support the statements in the conduct report connecting the inmate to the drug ring. *Hill*, 2021-Ohio-561, at ¶ 22-23, 26 (10th Dist.). This case is distinguishable from *Hill*, though, as Major Frizzell based his statements on his interpretation of a kite that Plaintiff wrote, and which Frizzell quoted in the conduct report, as well as his personal observations of Plaintiff in their meeting which he documented in the conduct report.

{¶32} In short, Plaintiff does not point to any evidence creating a genuine issue of material fact as to whether Major Frizzell acted with actual malice.  As such, the only reasonable conclusion that can be drawn is that the statements in the conduct report are subject to qualified privilege.

{¶33} Accordingly, Defendant is entitled to judgment as a mater of law on the claim of defamation.

**Abuse of Process**

{¶34} In his Motion for Summary Judgment, Plaintiff states that he has withdrawn the abuse of process claim.  (Plaintiff's Motion, p. 9.)  Defendant also points out in its Motion for Summary Judgment that Plaintiff testified in his deposition that he is no longer pursuing this claim.  (Plaintiff Depo., p. 120.)  Also, on December 11, 2024, Plaintiff filed a reply to Defendant's answer in which he stated, in part, that he "withdrew his abuse of process claim."  (Reply to Answer, p. 3.)  Accordingly, Defendant is entitled to judgment as a matter of law on the claim for abuse of process.

**Intentional Tort**

{¶35} "Traditionally, 'intentional tort' is not itself a cause of action but a broad category of conduct involving 'intentional' injury, as distinguished from 'accidental' torts that require only negligence or recklessness.  Instead, 'intentional tort' is usually defined in terms of discrete causes of action, each of which protect a particular interest; for example: harmful battery protects the interest in bodily integrity, assault protects the interest in freedom from fear of bodily harm, trespass protects the interest in private property, and false imprisonment protects the interest in freedom of movement.  Each intentional tort is a unique animal, with its own particular elements that must be proven to show liability and its own particular defenses."  *Stanley v. Deluxe Fin. Servs., Inc.*, 2009 U.S. Dist. LEXIS 28124 (N.D. Ohio Apr. 2, 2009).

{¶36} Plaintiff's complaint does not identify a particular theory of relief for this claim or specify the facts on which it is based.  Plaintiff argues in his Motion for Summary Judgment, however, that he "is entitled to summary judgment on his intentional tort claim because . . . Major Frizzell acted with the requisite intent to cause harm."  (Plaintiff's

Motion, p. 6.)  Specifically, "Major Frizzell authored a conduct report containing serious accusations of threats, which directly led to Mr. Castellon's placement in segregated housing and transfer to a 'raucous facility.'"  (*Id*.)

{¶37} The claim that Major Frizzell made a false, defamatory statement that was published and resulted in harm to Plaintiff sounds in defamation, and as previously explained, reasonable minds can only conclude that Plaintiff cannot prove a claim of defamation.  *See Webber*, 2017-Ohio-9199, at ¶ 36 (10th Dist.) (To establish defamation, "a plaintiff must show (1) the defendant made a false statement, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff was injured as a result of the statement, and (5) the defendant acted with the required degree of fault.").  And with respect to Plaintif's institutional placement, the Court previously dismissed, for lack of jurisdiction, any "claim challenging [Plaintiff's] increased security status or transfer from one institution to another."  *See* Entry, November 22, 2024.

{¶38} Accordingly, Defendant is entitled to judgment as a matter of law on the claim for intentional tort.

**Negligence**

{¶39} "[T]o establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981).

{¶40} According to Plaintiff's Motion for Summary Judgment, he brings the "negligence claim against DRC for Inspector Rose's wrongful withholding of public records."  (Plaintiff's Motion, p. 7.)  Stated differently, the "the current claims against Inspector Rose are for monetary damages based on his negligence", involving alleged "improper denials and delayed responses to records requests . . . ." (Plaintiff's Response, p. 5.)  Thus, Plaintiff claims that Rose owed a duty under public records law to produce the records that he requested, and that Rose's denials of such requests or delay in responding to them were in violation of public records law.

{¶41} As Defendant argues in its Motion for Summary Judgment, though, "the path for making a public records claim is not through a negligence action."  (Defendant's Motion, p. 13.)

{¶42} "A person allegedly aggrieved by a denial of access to public records in violation of [the Public Records Act] may . . . file either a mandamus complaint pursuant to R.C. 149.43(C)(1)(b) or a public-records-access complaint in the Court of Claims pursuant to R.C. 2743.75.  The person cannot pursue both remedies."  *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 12; *see also Arndts v. State Teachers Retirement Sys. of Ohio*, 2025-Ohio-3245, ¶ 10 (10th Dist.) ("the Court of Claims has no jurisdiction over mandamus actions").

{¶43} Here, Plaintiff's claim for negligence is predicated upon an alleged denial of access to public records, but a negligence action is not an available remedy for a person allegedly aggrieved by a denial of access to public records.  *See Welsh-Huggins* at ¶ 12. While a public records access complaint in the Court of Claims pursuant to R.C. 2743.75 is an available remedy for a denial of access to public records, Plaintiff does not seek relief under R.C. 2743.75 and the relief that he does seek, in the form of monetary damages, is not available under R.C. 2743.75.  Moreover, there is no dispute that Plaintiff filed a request for a writ of mandamus with the Supreme Court of Ohio alleging that the Institutional Inspector at Richland Correctional Institution, Kelly Rose, denied him access to public records, and the Supreme Court of Ohio denied his request as moot after Defendant subsequently provided Plaintiff with the requested documents.  *See State ex rel. Castellon v. Rose*, Slip Opinion No. 2025-Ohio-1491, ¶ 21.  Since a person cannot pursue both mandamus and an action under R.C. 2743.75, and Plaintiff already pursued the remedy of mandamus, an action under R.C. 2743.75 is not an available remedy.  *See* R.C. 2743.75(C)(1) ("Subject to division (C)(2) of this section, a person allegedly aggrieved by a denial of access to public records in violation of division (B) of section 149.43 of the Revised Code may seek relief under that section or under this section, provided, however, that if the allegedly aggrieved person files a complaint under either section, that person may not seek relief that pertains to the same request for records in a complaint filed under the other section.").

{¶44} Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

**Breach of Contract / Promissory Estoppel**

{¶45} "To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Prince v. Kent State Univ.*, 2012-Ohio-1016, ¶ 24 (10th Dist.).

{¶46} "The elements necessary to establish a claim for promissory estoppel are a (1) promise, (2) clear and unambiguous in its terms, (3) reliance that is reasonable and foreseeable, and (4) injury caused by such reliance." *Patel v. Univ. of Toledo*, 2017-Ohio-7132, ¶ 21 (10th Dist.).

{¶47} In his Motion for Summary Judgment, Plaintiff argues that there is "a clear basis for these claims" because "DRC, through its established policies and procedures, and specifically through the duties assigned to officials like Inspector Rose under R.C. 149.43, creates an unambiguous promise and expectation that incarcerated individuals will be provided access to their records upon request." (Plaintiff's Motion, p. 8.)

{¶48} Defendant argues in its Motion for Summary Judgment that Plaintiff had no contract with Defendant and cannot identify any promise that Defendant allegedly made to him. Defendant also asserts, correctly, that insofar as Plaintiff attempts to use Defendant's policies and procedures as the basis these claims, internal prison regulations are "primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997). "Thus, those violations will not support a cause of action by themselves . . . ." *Triplett v. Warren Corr. Inst.*, 2013-Ohio-2743, ¶ 10 (10th Dist.).

{¶49} With respect to Plaintiff's theory that the Public Records Act, R.C. 149.43, furnishes a basis for these claims, it is noted that Plaintiff similarly explained in his deposition that "Rose and his duty to provide the documents is a breach of contract/promissory estoppel." (Plaintiff Depo., p. 125.) Plaintiff further stated, "I believe it's an implied contract . . . when someone asks for public records". (Plaintiff Depo., p. 125.) The duties owed under the Public Records Act, however, are statutory. *See State ex rel. Ware v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 32, quoting R.C. 149.43(B)(1) ("The Public Records Act imposes obligations on 'a public office or person responsible for public records.'").

{¶50} Plaintiff points to no evidence demonstrating the existence of a contract between the parties that could form the basis for a breach of contract claim nor a promise that could form the basis for a promissory estoppel claim, and "'[a]s a general rule, promissory estoppel does not apply against the state, its agencies, arms and agents.'" *Ohio Environmental Dev. Ltd. Partnership v. Ohio Environmental Protection Agency*, 2010-Ohio-414, ¶ 17 (10th Dist.), quoting *Ohio Assn. of Pub. School Emps. v. School Emps. Retirement Sys. Bd.*, 2004-Ohio-7101, ¶ 48 (10th Dist.). Moreover, as explained earlier, rather than pursuing relief under a theory of "breach of contract/promissory estoppel", persons aggrieved by a denial of access to public records may pursue relief in the form of mandamus actions or actions under R.C. 2743.75. *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 12.

{¶51} Accordingly, Defendant is entitled to judgment as a matter of law on the claims for "breach of contract/promissory estoppel".

**CONCLUSION**

{¶52} Based upon the foregoing, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment shall be granted, Plaintiff's Motion for Summary Judgment shall be denied, and judgment shall be rendered in favor of Defendant.

LISA L. SADLER
Judge

[Cite as *Castellon v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-4747.]

| | |
|---|---|
| ESTEPHEN CASTELLON | Case No. 2024-00507JD |
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Robert Van Schoyck |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶53} A non-oral hearing was conducted in this case upon the parties' cross-Motions for Summary Judgment. For the reasons set forth in the decision filed concurrently herewith, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. As a result, Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed September 19, 2025**
**Sent to S.C. Reporter 10/16/25**